UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS
BENTON DIVISION

| | |
|---|---|
| DEBORAH HANSON, TIMOTHY HANSON, and THE WOMICK LAW FIRM, CHTD., <br><br>  Plaintiffs, <br><br> v. <br><br> MID CENTRAL OPERATING ENGINEERS HEALTH & WELFARE FUND, <br><br>  Defendant. | Case No.: 3:23-cv-02343 |

**<u>DEFENDANT'S ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIM</u>**

NOW COMES, Defendant, MID CENTRAL OPERATING ENGINEERS HEALTH & WELFARE FUND ("Welfare Fund"), by and through its attorneys, Cavanagh & O'Hara LLP, and for its Answer to the Amended Complaint filed by Plaintiffs, DEBORAH HANSON, TIMOTHY HANSON and THE WOMICK LAW FIRM, CHTD., states as follows:

1. Defendant, Welfare Fund, **<u>admits</u>** the allegations in ¶1 of Plaintiffs' Amended Complaint.[1]

2. Defendant, Welfare Fund, **<u>admits</u>** the allegations in ¶2 of Plaintiffs' Amended Complaint.

3. Defendant, Welfare Fund, lacks sufficient information to either admit or deny the allegations in ¶3 of Plaintiffs' Amended Complaint and demands strict proof thereof.

4. Defendant, Welfare Fund, **<u>admits</u>** the allegations in ¶4 of Plaintiffs' Amended Complaint.

---

[1] Plaintiffs' Complaint consists of <u>two</u> separate documents, *i.e., its initial Complaint filed on April 5, 2022, and its "Amendment to Complaint" filed on June 12, 2023.* As used in this pleading, term "Amended Complaint" refers to both pleadings.

1

5. Defendant, Welfare Fund, lacks sufficient information to either admit or deny the allegations in ¶5 of Plaintiffs' Amended Complaint and demands strict proof thereof.

6. Defendant, Welfare Fund, **admits** that Plaintiffs, DEBORAH HANSON AND TIMOTHY HANSON, were eligible for health and welfare insurance through Defendant and further **admits** that Exhibit B is a copy of the Defendant's summary plan description ("SPD") that was in effect at the time Plaintiffs' claims were incurred. Defendant otherwise **denies** the allegations in ¶6 of Plaintiffs' Amended Complaint.

7. Defendant, Welfare Fund, **admits** that Defendant's lien as of July 31, 2019, was $72,472.86, as indicated in Exhibit C. Defendant affirmatively states that Defendant's lien subsequently increased to $78,021.71 and Plaintiffs were provided notice thereof.

8. Defendant, Welfare Fund, **denies** the allegations set forth in ¶8 of Plaintiffs' Amended Complaint. Defendant affirmatively states that Plaintiff, WOMICK LAW FIRM, CHTD., waived any right to assert the "Common Fund Doctrine." Further, Defendant lacks sufficient information to either admit or deny whether Plaintiff, WOMICK LAW FIRM, CHTD., has a fee arrangement with Plaintiffs, DEBORAH HANSON AND TIMOTHY HANSON.

9. Defendant, Welfare Fund, **denies** the allegations set forth in ¶9 of Plaintiffs' Amended Complaint.

10. Defendant, Welfare Fund, **denies** the allegations set forth in ¶10 of Plaintiffs' Amended Complaint. Defendant specifically denies that Plaintiff, DEBORAH HANSON, is entitled to the payment of "reasonable" medical bills. Subject to the foregoing, Defendant **admits** that Plaintiff, DEBORAH HANSON, is eligible for benefits and is entitled to the payment of medical bills and expenses to the extent and subject to the terms specified in the Defendant's SPD.

11.     Defendant, Welfare Fund, **denies** the allegations set forth in ¶11 of Plaintiffs' Amended Complaint.

12.     Defendant, Welfare Fund, avers that ¶12 consists entirely of legal arguments or conclusions which do not require admission or denial in response.  In so far as any arguments or conclusions contain any factual averments, then such factual averments in ¶12 are **denied**.

13.     Defendant, Welfare Fund, **admits** that Defendant has the right to recover monies paid by the Defendant out of the settlement proceeds through subrogation and restitution. Defendant further **admits** that Plaintiff is eligible for the payment of medical expenses subject to the coverage provisions of the Defendant's SPD.  Defendant otherwise **denies** the allegations set forth in ¶13.

14.     Defendant, Welfare Fund, **denies** the allegations set forth in ¶14 of Plaintiffs' Amended Complaint.

15.     Defendant, Welfare Fund, **denies** the allegations set forth in ¶15 of Plaintiffs' Amended Complaint.

16.     Defendant, Welfare Fund, **admits** that it seeks reimbursement of medical claims paid on behalf of Plaintiff, DEBORAH HANSON, from the proceeds of Plaintiffs' settlement, but Defendant, Welfare Fund, otherwise **denies** the allegations set forth in ¶16 of Plaintiffs' Amended Complaint.

17.     Defendant, Welfare Fund, **denies** the allegations set forth in ¶17 of Plaintiffs' Amended Complaint.

18.     Defendant, Welfare Fund, **denies** the allegations set forth in ¶18 of Plaintiffs' Amended Complaint.

19. Inasmuch as ¶19 simply lists certain "facts" unknown to Plaintiffs, Defendant, Welfare Fund, submits that no admission or denial in response is required. In so far as ¶19 contains any factual averments, then such factual averments in ¶19 are **denied**.

**WHEREFORE**, Defendant, MID CENTRAL OPERATING ENGINEERS HEALTH & WELFARE FUND, respectfully requests that the relief sought by Plaintiffs pursuant to their Amended Complaint be denied, *in toto,* with assessment of attorneys' fees and costs against Plaintiff.

## AFFIRMATIVE DEFENSES

1. The interpretation of the applicable plan documents by Welfare Fund's Board of Trustees and all decisions related to its payment of claims on behalf of Plaintiffs, DEBORAH AND TIMOTHY HANSON, were not "arbitrary nor capricious" within the meaning of *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101 (1989).

2. Plaintiffs, DEBORAH AND TIMOTHY HANSON, failed to follow and exhaust the Defendant's mandatory claims and appeals procedures for all claims paid by the Defendant (totaling $78,021.71), and are therefore barred and/or precluded from challenging/disputing the amounts paid by the Defendant.

3. Defendant's summary plan description ("SPD") specifies that "no legal action for an appeal decision (including actions or proceedings before administrative agencies) may begin later than two years from the date the claim was required to be filed." Plaintiffs' claims are barred by the applicable limitations period specified in the Defendant's SPD (p. 44) under the section entitled "Sole Authority on Benefits."

4. Plaintiffs' claims are barred by the applicable statute of limitations under the *Employee Retirement Income Security Act,* 29 U.S.C. § 1001 *et seq.*

5.      By signing and agreeing to the terms of the Subrogation Agreement and by accepting the advanced payment of benefits by the Welfare Fund, Plaintiffs, WOMICK LAW FIRM, CHTD and DEBORAH and TIMOTHY HANSON, waived any right to assert the Common Fund Doctrine against any settlement funds.

## COUNTERCLAIM

NOW COMES, Counter-Plaintiff, MID CENTRAL OPERATING ENGINEERS HEALTH & WELFARE FUND ("Welfare Fund"), by and through its attorneys, Cavanagh & O'Hara LLP, and for its Counterclaim against Counter-Defendants, DEBORAH HANSON, TIMOTHY HANSON and THE WOMICK LAW FIRM, CHTD., states as follows:

1.      This action is brought and maintained in accordance with the provisions of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, *et seq.*, and is an equitable action to enforce the terms of an employee welfare benefit plan.

2.      This Court has jurisdiction over this action under Sections 502(e)(1) and 502(f) of ERISA, 29 U.S.C. §§ 1132(e)(1) and 1132(f), because the Welfare Fund seeks equitable relief under Title I of ERISA. This Court also has jurisdiction under 28 U.S.C. § 1331, because this action arises under the laws of the United States.

3.      Venue is proper in this Court under Section 502(e)(2) of ERISA, 29 U.S.C. § 1132(e)(2), because an action under Title I of ERISA may be brought in the district where a Defendant resides—in this case, the Southern District of Illinois.

## Parties

4.      Counter-Plaintiff, Mid Central Operating Engineers Health and Welfare Fund, ("Welfare Fund") is an employee welfare benefit plan as that term is defined in Section 3(1) of ERISA, 29 U.S.C. § 1002(1), and is administered from its principal office located in Terre Haute,

Indiana.

5. The Welfare Fund is primarily funded by contributions remitted by multiple participating employers pursuant to negotiated collective bargaining agreements with local unions affiliated with the International Union of Operating Engineers ("IUOE"). All principal and income from such contributions and investments thereof is held and used for the exclusive purpose of providing health and welfare benefits to the Welfare Fund's participants and beneficiaries and paying the Welfare Fund's administrative expenses.

6. Counter-Defendant, TIMOTHY HANSON, is a participant in the Welfare Fund.

7. Counter-Defendant, DEBORAH HANSON, is the spouse of Counter-Defendant, TIMOTHY HANSON, and was eligible for the payment of medical benefits through the Welfare Fund.

8. Counter-Defendant, WOMICK LAW FIRM, CHTD, is a law firm that has been engaged by Counter-Defendants, TIMOTHY and DEBORAH HANSON.

## Relevant Plan Provisions

9. Any health and welfare coverage extended by the Welfare Fund is subject to the terms, conditions, and limitations upon the payment of benefits stated in the Welfare Fund's summary plan description ("SPD"). A copy of the Welfare Fund's SPD that was in effect at the time Counter-Defendant, DEBORAH HANSON, incurred claims is attached hereto as **Exhibit A**.

10. The Welfare Fund's SPD, on pages 67-70, establishes and discusses the Welfare Fund's subrogation/reimbursement rights with respect to benefits paid on behalf of all covered individuals, including Counter-Defendants, TIMOTHY and DEBORAH HANSON.

11. The following is a listing of several key and material subrogation provisions in the Welfare Fund's SPD:

> Consistent with the Fund's rights set forth in this section, **if you or your Dependent submits claims for or receives any benefit payments from the Fund for an Illness or Injury that may give rise to any claim against any third-party, you and or your Dependent will be required to execute a *Subrogation Assignment of Rights, and Restitution Agreement* affirming the Fund's rights of restitution and subrogation with respect to the benefit payments and claims.** This form will assist the Fund in recovering benefits paid from a third party who was responsible for the Injuries giving rise to the claims. This *Agreement* must also be executed by you or your Dependent's attorney, if applicable.

[Emphasis Added]. See, top of page 68 of **Exhibit A**.

> **You or your Dependent will do whatever is necessary to secure the Fund's subrogation rights and will do nothing after the loss to prejudice these rights. You or your Dependent must do nothing to impair or prejudice the Fund's rights.** For example, if you or your Dependent chooses not to pursue the liability of a third party, you or your Dependent may not waive any rights covering any conditions under which any recovery could be received. Where you or your Dependent chooses not to pursue the liability of a third party, the acceptance of benefits from the Fund authorizes the Fund to litigate or settle your claims against the third party. If the Fund takes legal action for restitution for what it has paid, the acceptance of benefits obligates you or your Dependent (and your attorney if you have one) to cooperate with the Fund in seeking restitution, and in providing relevant information with respect to the accident.

[Emphasis Added]. See ¶3 on page 68 of **Exhibit A**.

> **The Fund is also granted a right of restitution from the proceeds of any settlement, judgment, or other payment obtained by you or your Dependent.** This right of restitution is cumulative with and not exclusive of the subrogation right granted in (1) above, but only to the extent of the benefits paid by the Fund.

[Emphasis Added]. See ¶5 on page 68 of **Exhibit A**.

> **The Fund's right of restitution and subrogation provide the Fund with first priority** to any and all recovery in connection with the Illness or Injury, whether the recovery is full or partial and no matter how the recovery is characterized, why, or by whom it is paid, or the type of expense for which it is specified. Such recovery includes amounts payable under your or your Dependent's own uninsured motorist insurance, under-insured motorist insurance, or any medical pay or no-fault benefits payable.

[Emphasis Added]. See ¶6 on page 68 of **Exhibit A**.

> The Fund's rights of restitution and subrogation apply regardless of the terms of the claim, demand, right of recovery, cause of action, judgment, award, settlement, compromise, insurance, or order regardless of whether the third party is found responsible or liable for the Illness or Injury, and regardless of whether you or your

Dependent actually obtain the full amount of such judgment, award, settlement, compromise, insurance, or order.

**The Fund, by payment of any proceeds, is granted an equitable lien on the proceeds of any settlement, judgment, or other payment received by you or your Dependent, and you or your Dependent consents to this lien and agrees to take all steps necessary to help the Fund Administrator secure the lien.**

**The Fund will have a lien on any amount received by you, your Dependent, or a representative of you or your Dependent (including your attorney) that is due to the Fund under this section, and any such amount will be deemed to be held in a constructive trust by you or your Dependent for the benefit of the Fund until paid in full to the Fund**.

[Emphasis Added]. See ¶7 on page 68-69 of **Exhibit A**.

The Fund's right of recovery will be a prior lien against any proceeds recovered by you or your Dependent; **this right will not be defeated nor reduced by the application of any so-called "Made-Whole Doctrine," "Rimes Doctrine," or any other such doctrine purporting to defeat the Fund's recovery rights by allocating the proceeds exclusively to non- medical expense damages.**

[Emphasis Added]. See ¶11 on page 69 of **Exhibit A**.

You or your Dependent will not incur any expenses on behalf of the Fund in pursuit of the Fund's rights, specifically, no court costs or attorney's fees may be deducted from the Fund's recovery without the prior express written consent of the Fund. **This right will not be defeated by any so-called "Fund Doctrine," "Common Fund Doctrine," "Attorney's Fund Doctrine," or any other such doctrine purporting to reduce the Fund's recovery amount.**

[Emphasis Added]. See ¶12 on page 69 of **Exhibit A**.

Failure to comply with the subrogation conditions outlined in this section may result in:

    1.    The Fund's withholding payment of future benefits; and

    2.    **An obligation by you or your Dependent to pay costs, attorney's fees, and other expenses incurred by the Fund in obtaining the required information or restitution.**

[Emphasis Added]. See top of page 70 of **Exhibit A**.

## Background Information

12.    On or about April 5, 2019, Counter-Defendant, DEBORAH HANSON, was

injured in a motor vehicle accident.

13. After the accident, the Welfare Fund received notice of the claims incurred by Counter-Defendant, DEBORAH HANSON. Before claims were approved and paid (*i.e.,* "processed" or "adjudicated"), the nature of the claims (*i.e., the fact that the claims were accident related*) triggered the Welfare Fund to send Counter-Defendants, TIMOTHY and DEBORAH HANSON, the Welfare Fund's Subrogation, Assignment of Rights and Restitution Agreement ("Subrogation Agreement").

14. The Welfare Fund's SPD (*i.e.,* **Exhibit A**), on page 68, paragraph 2, requires all participants and beneficiaries, including Counter-Defendants, TIMOTHY and DEBORAH HANSON, to execute the Subrogation Agreement as a condition precedent to the Welfare Fund's payment of claims.

15. As required by the Welfare Fund's SPD, Counter-Defendants, TIMOTHY and DEBORAH HANSON, both executed and returned the Subrogation Agreement. A true, accurate and complete copy of the Subrogation Agreement is attached hereto as **Exhibit B**.

16. John Womick, as Attorney for Counter-Defendants, TIMOTHY AND DEBORAH HANSON, and WOMICK LAW FIRM, CHTD, also executed the Subrogation Agreement. **See, Exhibit B.**

17. Because Counter-Defendants, TIMOTHY and DEBORAH HANSON, and their attorney, John Womick, signed and returned the Subrogation Agreement, the Welfare Fund conditionally paid or "advanced" payment of the medical bills related to the injuries suffered by Counter-Defendant, DEBORAH HANSON, in the automobile accident.

18. The Welfare Fund's records indicate that the Welfare Fund paid $78,021.71 in medical expenses and claims for the benefit of Counter-Defendant, DEBORAH HANSON, as a

result of the motor vehicle accident.

19. Because the Welfare Fund paid medical bills on behalf of Counter-Defendant, DEBORAH HANSON, the Fund asserted a right to reimbursement against the Counter-Defendants, including a subrogation lien in the amount of $78,021.71 against any settlement proceeds.

20. Although the Counter-Defendants were advised of the Fund's reimbursement rights and subrogation lien, to date no Counter-Defendant has reimbursed the Welfare Fund for the medical benefits it paid on Counter-Defendant, DEBORAH HANSON's behalf.

21. The Welfare Fund has been informed that Counter-Defendants have settled against the at-fault party for a total recovery of $100,000. ("Settlement").

22. Upon information and belief, the settlement amount of $100,000.00 is held by one or more of the Counter-Defendants.

## Count I: Imposition of an Equitable Lien and Constructive Trust on the Proceeds of the Settlement

23. The Welfare Fund hereby realleges and incorporates each and every allegation made in paragraphs 1 through 22 of this Counterclaim as though fully set forth herein.

24. Pursuant to Section 502(a)(3) of ERISA, 29 U.S.C. §1132(a)(3), Welfare Fund brings Count I to obtain appropriate equitable relief against the Counter-Defendants.

25. One or more of the Counter-Defendants are in possession of a specifically identifiable fund in the amount of the settlement proceeds received from the Settlement.

26. Under the terms of the Welfare Fund's SPD, the Welfare Fund has established an equitable lien in the identifiable amount of $78,021.71 against the Counter-Defendants.

27. The proceeds of the settlement are held by one or more of the Counter-Defendants, and upon which the Fund is entitled to an equitable lien in the amount of $78,021.71,

is to be held in constructive trust by Counter-Defendants for the Welfare Fund to the extent of the Welfare Fund's lien.

28. Based upon the equitable lien and the constructive trust, the Counter-Defendants stand in a fiduciary relationship to the Welfare Fund with respect to the value of such lien and trust, and the Counter-Defendants may not dispose of assets subject to that lien or violate fiduciary duties relating to those assets.

**WHEREFORE**, the Welfare Fund requests the following relief:

(a) Equitable remedies against the Counter-Defendants and in favor of the Welfare Fund, pursuant to Section 502(a)(3) of ERISA, 29 U.S.C. § 1132(a)(3), in the form of:

    i. Imposition of an equitable lien and a constructive trust upon the proceeds of the Settlement held by the Counter-Defendants, as identified in this Counterclaim;

    ii. Enforcement of the Welfare Fund's equitable lien in the amount of $78,021.71 (the full amount of the Fund's lien on the Settlement) belonging to the Welfare Fund and held by the Counter-Defendants, as identified in this Counterclaim;

    iii. Enjoinment of the Counter-Defendants from disposing of any funds held in constructive trust for the Welfare Fund, until such time as the Welfare Fund's equitable lien has been satisfied in full;

(b) That this Court retain jurisdiction to enforce the equitable remedies sought by the Welfare Fund in this Complaint, until such time as the Welfare Fund's equitable lien has been satisfied in full;

(c) An award of attorneys' fees and costs; and

(d) Such further or different relief as this Court may deem proper and just.

## Count II: Enforcement of the Plan as It Relates to the Settlement
## (Subrogation Lien & Constructive Trust)

29. The Welfare Fund hereby realleges and incorporates each and every allegation made in paragraphs 1 through 22 of this Counterclaim as though fully set forth herein.

30. Pursuant to Section 502(a)(3) of ERISA, 29 U.S.C. § 1132(a)(3), the Welfare Fund brings Count II to enforce the terms of the Welfare Fund's Plan/SPD.

31. The SPD grants the Welfare Fund reimbursement and subrogation rights, and requires the repayment by any responsible party (including the Counter-Defendants) of covered medical benefits paid by the Welfare Fund on behalf of a covered individual.

32. Thus, under the terms of the SPD, the Welfare Fund is entitled to reimbursement from the Counter-Defendants in the amount of $78,021.71, representing funds paid by the Welfare Fund on behalf of Counter-Defendant, DEBORAH HANSON, for medical benefits incurred as a result of the accident, before any settlement proceeds, including attorneys' fees, are paid to the Counter-Defendants.

33. To date, the Counter-Defendants have failed to pay any reimbursement to the Fund from the proceeds of the Settlement, and the $78,021.71 subrogation lien is unreimbursed.

**WHEREFORE**, the Welfare Fund requests the following relief:

(a) Equitable remedies against the Counter-Defendants and in favor of the Welfare Fund, pursuant to Section 502(a)(3) of ERISA, 29 U.S.C. § 1132(a)(3), in the form of:

    i. An order enforcing the terms of the SPD and enjoining the Counter-Defendants from violating the Welfare Fund's subrogation rights as established by the SPD, including an order requiring reimbursement in the amount of $78,021.71 (the full amount of the Welfare Fund's lien on the Settlement);

        ii.        Enjoinment of the Counter-Defendants from disposing of any settlement funds in the specifically identifiable proceeds from the Settlement held by the Counter-Defendants as described in this Counterclaim, until such time as the Welfare Fund's subrogation rights as established by the SPD have been satisfied in full;

        iii.        Imposition of an equitable lien and a constructive trust upon the proceeds of the Settlement held by the Counter-Defendants, as identified in this Counterclaim;

(b)    That this Court retain jurisdiction to enforce the equitable remedies sought by the Welfare Fund in this Complaint, until such time as the Welfare Fund's subrogation rights as established by the SPD have been satisfied in full;

(c)    An award of attorneys' fees and costs; and

(d)    Such further or different relief as this Court may deem proper and just.

### Count III – Breach of Fiduciary Duty

34.    The Welfare Fund hereby realleges and incorporates each and every allegation made in paragraphs 1 through 22 of this Counterclaim as though fully set forth herein.

35.    One or more of the Counter-Defendants are in possession of assets, which in equity and good conscience are property of the Fund, an employee welfare benefit plan, because the Counter-Defendants refuse to reimburse the Welfare Fund the amount of the Welfare Fund's lien on the proceeds of the Settlement meant to be paid to the Welfare Fund. The Counter-Defendants thereby owe an obligation under Section 404 of ERISA, 29 U.S.C. § 1104, to discharge their fiduciary duties to the Welfare Fund regarding those assets, hold said assets in constructive trust for the Welfare Fund, and reimburse the full amount owed to the Welfare Fund, upon demand by the Welfare Fund.

36. Notwithstanding that the Welfare Fund has demanded full repayment of the medical benefits which the Fund has paid on behalf of Counter-Defendant, DEBORAH HANSON, in the amount of $78.021.71, the Counter-Defendants have refused to reimburse the Welfare Fund any of the settlement assets constructively held by them. Therefore, the Counter-Defendants have breached their fiduciary duties and are liable to the Fund for that breach under Section 409 of ERISA, 29 U.S.C. § 1109. The Defendants are thus required to hold the assets for the exclusive purpose of providing benefits to participants and beneficiaries of an employee welfare benefit plan and are liable to the Welfare Fund.

37. The Counter-Defendants' refusal to reimburse the Welfare Fund for the medical benefits it has paid on behalf of Counter-Defendant, DEBORAH HANSON, constitutes a breach of Counter-Defendants' fiduciary duty. The Counter-Defendants hold property of an employee welfare benefit plan as constructive trustees and those assets must only be used for the purpose of providing benefits to participants and beneficiaries of the Welfare Fund according to the terms of the Welfare Fund's SPD.

**WHEREFORE**, the Welfare Fund requests the following relief:

(a) Equitable relief under Section 502(a)(2) of ERISA, 29 U.S.C. § 1132(a)(2), to remedy Counter-Defendants' fiduciary breach and violation of Section 409 of ERISA, 29 U.S.C. § 1109, in the form of an injunction requiring Counter-Defendants to reimburse the Welfare Fund $78,021.71;

(b) Costs and attorney's fees in favor of the Welfare Fund and against the Counter-Defendants;

(c) That this Court retain jurisdiction to enforce the equitable remedy sought by Welfare Fund, for such period of time as is required, until the Counter-Defendants reimburse the Welfare Fund the amount of $78.021.71; and

   (d) That this Court enter any further orders which are reasonable and just to effectuate the equitable remedy requested herein.

          Respectfully submitted,

          MID CENTRAL OPERATING
          ENGINEERS HEALTH & WELFARE
          FUND,

        By:  s/ John T. Long
          JOHN T. LONG (6283403)
          CAVANAGH & O'HARA LLP
          Attorneys for Defendant
          2319 W. Jefferson Street
          Springfield, IL 62702
          (217) 544-1771 – Telephone
          (217) 544-9894 – Facsimile
          johnlong@cavanagh-ohara.com

### CERTIFICATE OF SERVICE

  I hereby certify that on the 6th day of July, 2023, a copy of the foregoing was filed electronically with the Clerk of the Court, via the Court's CM/ECF system, and further that a copy of the same was sent by email to jwomick@womicklawfirm.com and placed in the United States Mail, First Class Postage prepaid, for service upon:

      Womick Law Firm, Chtd.
        P.O. Box 1355
       Carbondale, IL 62903

        By:  s/ John T. Long
          JOHN T. LONG (6283403)
          CAVANAGH & O'HARA LLP
          Attorneys for Defendant
          2319 W. Jefferson Street
          Springfield, IL 62702
          (217) 544-1771 – Telephone
          (217) 544-9894 – Facsimile
          johnlong@cavanagh-ohara.com